IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REBECCA L. MCGREW,

Plaintiff,                                         13cv0144
                                                   **ELECTRONICALLY FILED**

v.

CAROLYN W. COLVIN,[1] *Commissioner of*
*Social Security*,

Defendant.

## I.     INTRODUCTION

Rebecca L. McGrew ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

seeking review of the final determination of the Commissioner of Social Security ("Defendant"

or "Commissioner") denying her application for disability insurance benefits ("DIB") and

supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 401-433 and 1381 – 1383f ("Act").  This matter comes before the Court upon cross-

motions for summary judgment.  (Doc. Nos. 6 & 8).  The record has been developed at the

administrative level.  For the following reasons, Plaintiff's Motion for Summary Judgment (doc.

no. 6) will be GRANTED in PART and DENIED in PART, and Defendant's Motion for

Summary Judgment (doc. no. 8) will be DENIED.

## II.    PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI with the Social Security Administration on September 30

2009, claiming an inability to work due to disability beginning May 15, 2009.  (Transcript

("Tr.") at 123-31).  Plaintiff was initially denied benefits on March 18, 2010.  (Tr. 61-69).  A

---

[1] Pursuant to Fed. R. Civ. P. 25(d).

hearing was scheduled for June 16, 2011.  (Tr. 32-46).  Plaintiff appeared to testify, and was not

represented by counsel.  (Tr. 47-56).  A vocational expert ("VE") also testified.  (Id.).  The

Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on June 29,

2011.  (Tr. 19-30).  Plaintiff filed a request for review of the ALJ's decision by the Appeals

Council, which request was denied on November 30, 2012, thereby making the decision of the

ALJ the final decision of the Commissioner.  (Tr. 3-8).

Plaintiff filed her Complaint in this Court on January 29, 2013.  (Doc. No. 1).  Defendant

filed her Answer on April 22, 2013.  (Doc. No. 3).  Cross-motions for summary judgment

followed.  (Doc. Nos. 6 & 8).

III.    STATEMENT OF THE CASE

The ALJ made the following findings in denying Plaintiff's application for SSI:

1.  The claimant meets the insured status requirements of the Social Security Act
    through September 30, 2009. (Tr. 24);
2.  The claimant has not engaged in substantial gainful activity since May 15,
    2009, the alleged onset date (20 CFR 404.1571 *et seq*. 416.971 *et seq*.). (Id.);
3.  The claimant has the following severe impairments: irritable bowel syndrome,
    hepatitis C, obesity, and asthma (20 CFR 404.1520(c) and 416.920(c)). (Id.);
4.  The claimant does not have an impairment or combination of impairments that
    meets or medically equals one of the listed impairment in 20 CFR 404,
    Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
    416.920(d), 416.925 and 416.926). (Tr. 25);
5.  After careful consideration of the entire record, [] the claimant has the residual
    functional capacity to perform light work with a sit-stand option at her
    discretion and limited to low stress work defined in this case as simple,
    routine, repetitive tasks (Id.);
6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565
    and 416.965). (Tr. 28);
7.  The claimant was born on November 8, 1962 and was 46 years old, which is
    defined as a younger individual age 18-49, on the alleged disability onset date
    (20 CFR 404.1563 and 416.963). (Id.);
8.  The claimant has at least a high school education and is able to communicate
    in English (20 CFR 404.1564 and 416.964). (Id.);
9.  Transferability of job skills is not material to the determination of disability
    because using the Medical-Vocational Rules as a framework supports a
    finding that the climant is "not disabled," whether or not the claimant has

  transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 28-29);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416,969 and 416.969(a)); (Tr. 29); and

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)) (Id.).

## IV. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012). A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003) (quoting *Stunkard v. Sec'y of Health & Human Serv.*, 841 F. 2d 57, 59 (3d Cir. 1988)); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions.  He or she must make specific findings of fact.  *Brown*, 649 F.3d at 197.  The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence.  *Jones,* 364 F.3d at 504-05.

The Social Security Administration, acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act.  The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the

impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision.  In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context.  *See John Balko & Assocs. v. Sebelius*, 2012 WL 6738246, *4 (W.D. Pa. Dec. 28, 2012) (citing *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001)).  Thus, the Court's review is limited to the four corners of the ALJ's decision.

## V.     DISCUSSION

Plaintiff objects to the determination of the ALJ, arguing: (1) Plaintiff did not voluntarily waiver her right to representation; (2) the ALJ improperly determined Plaintiff's residual functional capacity (RFC); and (3) the Vocational Expert's ("VE's") testimony was flawed.

Doc. No. 7, 1.  Defendant counters that the ALJ had substantial evidence to support his RFC

determination, that the ALJ properly weighed the medical opinions of record and considered all

of Plaintiff's symptoms to the extent they could reasonably be accepted as consistent with the

objective medical evidence, and that substantial evidence supports the ALJ's credibility analysis.

When rendering a decision, an ALJ must provide sufficient explanation of his final

determination to provide a reviewing court with the factual basis underlying the ultimate

disability finding. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000) (citing

*Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).  The ALJ need only discuss the most

pertinent and relevant evidence bearing upon a claimant's disability status, but must provide

sufficient discussion to allow the Court to determine whether any rejection of potentially

pertinent and relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-

04 (3d Cir. 2008) (citing *Burnett*, 220 F.3d at 121; *Cotter*, 642 F.2d at 706)).  In the present case,

the ALJ adequately met his responsibilities under the law.

A.      Waiver of Representation

Plaintiff first contends that she did not knowingly and voluntarily waiver her right to

representation at the hearing held before the ALJ.  A claimant does not have a constitutional

right to be assisted at a hearing before an ALJ. *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x

155, 157 (3d Cir. 2008).  However, the Act provides a statutory right to be represented at an ALJ

hearing.  42 U.S.C. § 406.  Defendant has promulgated regulations pursuant to Section 406

relating to representation by both attorneys and non-attorneys at hearings before an ALJ. *See* 20

C.F.R. §§ 404.1705, 416.1505.

In determining whether reversal or vacatur is appropriate, the Court must undertake a

multi-step process. *See Mayes v. Soc. Sec. Admin.*, 190 F. App'x 183, 186 (3d Cir. 2006).  First,

the Court must determine if Plaintiff waived knowingly and voluntarily waived her right to

representation. *Id*. "[W]hether the claimant waived the right to counsel knowingly and

intelligently determines who has the burden of demonstrating whether remand is appropriate."

*Vivaritas*, 264 F. App'x at 158. "If the ALJ does not obtain a valid waiver of counsel, the burden

is on the Commissioner to show the ALJ adequately developed the record." *Id*. (quoting *Skinner*

*v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007)18). Otherwise, the burden is on Plaintiff to show

that the ALJ failed to adequately develop the record. *Cf. id.*

> 1.      Knowing and Intelligent Waiver

In this case, Plaintiff was advised in writing of her right to representation. (*E.g.* Tr. 33)

When she appeared *pro se* at the hearing, the ALJ conducted the following colloquy:

> *ALJ:* In your Notice of Hearing you were advised if you wanted to be you could
> be represented by an attorney. I assume you want to proceed with the hearing
> without an attorney?
>
> *McGrew:* Well, where I was living the lady, I basically stayed in her basement, I
> moved here from Texas, no car, no means of transportation, she wouldn't take me
> anywhere. Come to find out she wasn't even giving me my mail. So, a lot of the
> things that I should have gotten I never got in regard to this and many more
> things. So, I am just going to do the best I can I guess.
>
> *ALJ:* Did you want to get a lawyer?
>
> *McGrew:* I can't afford one and I have zero income. I have had zero income for
> almost two years.

(Tr. 49-50).

The United States Court of Appeals for the Third Circuit has declined to adopt a rigid

protocol for an ALJ to follow when obtaining a waiver of representation. *See Vivaritas*, 264 F.

App'x at 158 n.1 (declining to adopt the procedure set forth by the United States Court of

Appeals for the Seventh Circuit in *Skinner*, 478 F.3d at 842, which requires an ALJ to notify

claimant of specific rights in order for the waiver to be considered valid). In *Vivaritas*, the

United States Court of Appeals for the Third Circuit found that the following colloquy would normally be sufficient for a knowing and intelligent waiver of counsel:

> ALJ: Let me first explain to you what a representative could do for you. A representative could help you to gather medical records and other documents in support of your case. A representative could help you to organize your case and could help you to present your case before an Administrative Law Judge. There may be representatives that do not charge any money. Have you given any thought to getting a representative?
>
> CLMT: I was—I went to check into legal aide [sic] because I can't afford [sic] and they say—I think they're on Summit or something. I was looking for it, but I couldn't find it.
>
> ALJ: Okay. Well, let me explain to you what your options are today. First, let me tell you that it's perfectly possible to have a fair hearing either with a representative or without a representative. It's purely a personal choice of yours. It—so you have two choices today. You can either choose to proceed today with the hearing without a representative or I could give you an adjournment of 30 days to give you a chance to get a representative. If you choose to proceed today and if I notice during the hearing that there are any documents that are missing from your record that I need, I can take steps through my office to get those and add them to your file. Also, if you proceed today and for some reason you are not happy with the [d]ecision that I make, you would be free to appeal that [d]ecision and you could get a representative at that time if you so chose [sic]. So what is your [d]ecision? Do you want to proceed or do you want to have a chance to get a representative?
>
> CLMT: Well, I'm going to proceed.
>
> ALJ: You want to proceed today?
>
> CLMT: Yeah.

*Id*. at 159-59 (alterations in original).  The colloquy in *Vivaritas* differs substantially from the one that occurred in this case.  In *Vivaritas*, the ALJ notified the claimant exactly what a representative would be able to do for her in the hearing.  *Id*. at 158.  The ALJ in *Vivaritas* also informed the claimant that there was the possibility of obtaining representation at no cost.  *Id*. Finally, the ALJ in *Vivaritas* informed the claimant that the hearing could be postponed for thirty days in order to allow time for the claimant to find a representative.  *Id*.   In the case at bar, the

ALJ failed to mention any of these three important aspects of representation. Instead, he just

informed her that she had a right to have a representative present and asked if she would like to

proceed *pro se*. (Tr. 49-50) Furthermore, Plaintiff's response to the ALJ's questions regarding

receipt of the letter explaining her right to representation were equivocal at best, and in any

event, as the following cases demonstrate, without more would not have sufficiently apprised

Plaintiff of her rights for her waiver to be knowing and intelligent.

Similarly, in *Boyd v. Barnhart*, 98 F. App's 146, 147 (3d Cir. 2004), the United States

Court of Appeals for the Third Circuit found that a waiver was effective when "[t]he ALJ also

gave instructions to Boyd about the availability of counsel, offering to continue the hearing for

her to secure a representative or another attorney." *Id*. In the case at bar, the ALJ neither

instructed Plaintiff about the availability of counsel nor offered to continue the hearing. (Tr. 49-

50)

In *Yakely v. Astrue*, 2013 WL 1010671, *5 (D. N.J. Mar. 13, 2013), the United States

District Court for the District of New Jersey found that a claimant has not knowingly and

intelligently waived her right to representation after engaging in a colloquy almost identical in

content to the colloquy at issue in the case at bar. As the District Court stated:

> [a]lthough the ALJ confirmed that Yakely knew that she could 'have a
> representative' at those hearings, the ALJ failed to confirm that Yakely
> understand that her 'representative' could be an attorney who (1) could
> meaningfully assist her presentation to the ALJ, and (2) might work on either a
> pro bono or a contingency fee basis.

*Id*.

In *Howe v .Astrue*, 2013 WL 593975, *2 (W.D. Pa. Feb. 14, 2013), the Honorable

Donetta W. Ambrose found the following colloquy sufficient:

> ALJ: Well, they sent you a letter where they said if you want to get
> representation, and they provided you with a list of professional organizations to

9

contact, so you have to tell me if you want to go ahead today without representation, and if you want to have this rescheduled, it will be maybe by the end of Decemeber, possibly January 2011, that we'll have this case rescheduled. Because we are very ahead of the schedule with my docket, so you let me know which way you want to go.

Plaintiff: I think I'd probably be better with representation.

ALJ: Okay, but you know if I give you that opportunity, would be the first and the last one that I give you. You are not having more postponements, and you have to be ready next time. I see here in Exhibit 5–B....it's very clear that on December the 11th, 2009, they indicated you---you had the ride [sic] to be represented by an attorney or other representative of your choice.

Plaintiff: I thought I sent that letter back in and said yes.

ALJ: Yeah, but the thing is, did you find someone? Because I don't have anything here that you found someone to represent you, because we're not giving you a representation—you have to—

Plaintiff: See, that's what I thought you guys were.

ALJ: No, no, no. You have to look at it on your own and there is a list of professional organizations to contact.

Plaintiff: Okay.

ALJ: So, that's what you want to do at this time, Mr. Howe? You let me know, because I have the list of professional contacts, and also you will have to sign a statement that would be the first and last time I'll give you a postponement. Because you have to be ready next time. So, you let me know which way you want to go.

Plaintiff: We might as well proceed with it.

*Id* (alteration in original). The colloquy in *Howe* differs from the one in the case at bar because in *Howe* the ALJ notified the claimant of the availability of legal aid organizations and offered to postpone the hearing to allow Howe to find a representative. *Id.* Again, neither of those things occurred in the case at bar. (Tr. 49-50)

Likewise, in *Bentley v. Comm'r of Soc. Sec.*, 2011 WL 4594290, *10 (D. N.J. Sept. 30, 2011), the United States District Court for the District of New Jersey found that the ALJ's

10

reminder to Plaintiff of the availability of *pro bono* or contingent fee representation was key to a finding of a knowing and intelligent waiver of the right to representation. *Id.* In the case at bar, the ALJ was aware that the reason Plaintiff did not obtain representation was lack of funds, but failed to notify her of the availability of *pro bono* or contingent fee representation. (Tr. 49-50)

In sum, the ALJ failed to properly notify Plaintiff of her right to representation at the hearing. The colloquy was not sufficient and did not resemble any of the numerous colloquies that the United States Court of Appeals for the Third Circuit or District Courts within this Circuit have approved. Instead, the colloquy resembled that of *Yakely*, one of the few cases in this Circuit in which a Court has found that a mentally competent individual did not knowingly and intelligently waive their right to representation. Accordingly, the burden is on Defendant to demonstrate that Plaintiff's lack of a knowing and intelligent waiver was harmless error.

### 2.    Prejudice to Plaintiff

Plaintiff's lack of representation was prejudicial to the adjudication of her claim. When the ALJ examined the VE, all of the testimony was in jargon, that a person without specialized training in social security disability determinations would not be able to understand. (Tr. 55) ("Worked as a bus driver, semi-skilled SVP: 4, medium exertion. . . .") The ALJ did not ask the VE to explain what these abbreviations meant and why they were important in the determination of what jobs Plaintiff could perform in the future, nor did he do so himself. (Id.) After one or two very brief hypothetical questions to the VE, the ALJ asked Plaintiff if she had any questions for the VE. (Id.) He did not explain to her why questioning of the VE was important or assist Plaintiff in asking questions that may have assisted Plaintiff's case. (Id.) Instead, the ALJ adjourned the hearing without any comment when Plaintiff failed to ask any questions of the VE. (Tr. 56)

Defendant's arguments to the contrary are without merit.  For example, Defendant argues that the ALJ adequately explored Plaintiff's response to his question regarding her ability to stand or sit for more than a few hours at a time.  (Tr. 53-54)  However, the ALJ's only follow-up question was whether that had started recently.  (Tr. 54)  If assisted by a representative, Plaintiff would have been able to testify as to how long she could sit and/or stand in a given day which is an important factor in determining whether she is disabled under the Act.

In sum, the transcript of the ALJ demonstrates that Plaintiff was prejudiced by her lack of representation.

## VI.    CONCLUSION

Based upon the foregoing, the Court finds that Plaintiff did not knowingly and intelligently waive her right to representation at the hearing before the ALJ and that lack of representation was prejudicial.  Accordingly, Plaintiff's Motion for Summary Judgment (doc. no. 6) will be GRANTED in PART and DENIED in PART, and Defendant's Motion for Summary Judgment (doc. no. 8) will be DENIED.  Plaintiff's Motion will be granted to the extent it seeks vacatur of the ALJ's decision, and denied to the extent that it seeks an award of benefits.

The decision of the ALJ will be vacated and the case remanded for a *de novo* hearing before the ALJ.[2]  An appropriate Order follows.


                                                    s/ Arthur J. Schwab
                                                    Arthur J. Schwab
                                                    United States District Judge


cc/ecf:  All counsel of record.

---

[2] The Court declines to address Plaintiff's other two arguments as the ALJ's determinations may change after a *de novo* hearing.